# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Coles et al.

v.

Courter

July 8, 1999

Case No. (Chancery) 99-96

BY JUDGE EDWARD L. HOGSHIRE

Plaintiffs have filed a motion requesting a temporary injunction prohibiting the application of Va. Code § 3.1-941.1 to the scales used by farmers at the Charlottesville City Market. Along with his Memorandum of Law, Defendant filed an affidavit from John Alan Rogers, Program Manager of the Office of Product and Industry Standards, Virginia Department of Agriculture and Consumer Services, concerning the events leading to this suit. Defendant has also filed a demurrer. For purposes of the temporary injunction, the Court directed Plaintiffs to submit affidavits in support of their bill. Based on these affidavits, the Court declines to grant the temporary injunction.

### Facts

The Charlottesville City Market provides an opportunity for farmers to sell at a common gathering produce grown by the farmers on their own land. The rules of the Market require the sellers to have grown the produce themselves on land that they either own or lease. (City Market Rules and Regulations ¶ 3.) According to the affidavits provided by the Plaintiffs, the farmers who sell their produce at the Market tend to make less than $1,000.00 profit from such sales per year. (*See, e.g.*, Coles Aff. ¶ 3.) Virginia Code § 3.1-941.1 adopts the tolerances for weighing devices established by the National Institute of Standards and Technology and printed in that organization's publication Handbook 44 as the only compliant tolerances for

commercial weighing in Virginia. Several customers of the Market stated in affidavits that they were not bothered by the use of scales that did not conform to Handbook 44. (*See e.g.*, Hargrave Aff. ¶ 2.) The manager of the Market stated in her affidavit that she has never received a complaint about incorrect scales since she started managing the Market in 1988. (Johnson Aff. ¶ 1.) Furthermore, between 1988 and 1997, there had never been an inspection of the Market by any member of the Virginia Department of Agriculture and Consumer Services concerning proper scales. (*Id.*, at ¶ 2; *see also* Brown Aff. ¶ 5.)

According to the affidavit provided by the Defendant, between September 6, 1997, and October 17, 1998, inspectors condemned the scales used by the Plaintiffs and prohibited further use of such scales. (Rogers Aff. ¶¶ 1-5.) On October 17, 1998, Plaintiff Coles was assessed with a civil penalty of $700.00 for use of a condemned scale. (*Id.*, at ¶ 8.) This penalty was later reduced to $350.00 on November 4th. (*Id.*, at ¶ 9.) Plaintiff Coles has not paid the fine. (*Id.*, at ¶ 10.) Defendant argues that the use of a scale, and therefore an approved scale, is not required by state law, but that if a scale is to be used, it must conform to the standards of Handbook 44. (Defendant's Memorandum of Law at 10.) Plaintiffs filed suit to prevent enforcement of Handbook 44 specifications at the Charlottesville City Market.

## Analysis

At the outset, Plaintiffs have expressed concern over the Court's use of affidavits in deciding the question of a temporary injunction. They point to § 8.01-420 for the proposition that affidavits may not be used to dismiss their action. The Court agrees that affidavits alone would not be sufficient for summary judgment. However, § 8.01-628 allows a determination for a temporary injunction to be shown by affidavit. The Court concerns itself only with the temporary injunction in this decision, so the use of affidavits is appropriate.

In order for the Court to grant a temporary injunction, the Plaintiffs must establish (1) that the Plaintiffs will suffer irreparable harm unless the injunction is granted, and (2) that there is a substantial likelihood of success for the Plaintiffs on the merits. *See e.g.*, *McNeal v. Richmond Mem. Hosp.*, 36 Va. Cir. 531 (1995). Based on the evidence presented, the Plaintiffs have not established that they will suffer irreparable harm unless the Court grants the injunction. The farmers who use scales that violate the Handbook 44 requirements do not earn their living from selling produce at the Market. The income they derive from such sales is less than $1,000.00 per year, and several

of the affiants stated the profit is negligible. (*See, e.g.* Arnold Aff. ¶ 4.) Although the sharing of an approved scale may be impractical, (*See* Johnson Aff. ¶ 4), there is no testimony that it would be impossible. In fact, the Commissioner does not maintain that the farmers need to use approved scales for all sales, merely that if a farmer chooses to use a scale, that scale must meet Handbook 44 guidelines. Thus, a farmer could sell produce without the use of a scale and not commit any violation.

Beyond the showing of irreparable harm, the Plaintiffs have not established that they are likely to win on the merits. Plaintiffs maintain that the small volume of sales by farmers at the Market does not constitute commerce under the Virginia Code and that therefore they should not be subject to the requirements of Handbook 44. *Black's Law Dictionary* defines "commerce" as "the exchange of goods, productions, or property of any kind; the buying, selling, and exchanging of articles." *Black's Law Dictionary* 269 (6th ed. 1990). This definition does not make an exception for produce grown by farmers on their own land, nor does the Virginia Code make such an exception. In cases such as *Hardin v. Radford*, 112 Va. 547, 72 S.E. 101 (1911), the courts held that a statute could treat small farmers differentially, not that farmers had to be treated differentially in the absence of a statute. The Plaintiffs here ask the court to treat sales by small farmers as noncommercial even though there is no statutory provision authorizing this. Plaintiffs offer no case law in which transactions involving small farmers were not considered commerce. Instead, in the cases cited by the Plaintiffs, such transactions were specifically exempted from tax by statutory provisions. Because there is no statutory provision for differential treatment of small farmers, the cases cited by Plaintiffs are inapposite.

Handbook 44 is not limited to interstate commerce. The power to set weights and measures is an express grant to Congress from the Constitution. *See* U.S. Const., art. I, § 8, cl. 5. This power is not limited by a connection to the Commerce Clause. However, even if Congress were limited in the application of its weights and measures to interstate commerce, there is nothing to prevent the Commonwealth from adopting the same regulations for its intrastate commerce. Virginia Code § 3.1-941.1 adopts the specifications set out in Handbook 44 for commercial transactions. There is nothing in the Code that adopts any possible limitations in application of Handbook 44. Thus, even if Handbook 44 were limited to interstate commerce, there is nothing in the Virginia statute that adopts that limitation. The Commonwealth has simply decided that any commercial weighing devices used in Virginia must meet the standards of accuracy set out in Handbook 44.

The Virginia Code says, "The specifications, tolerances, and regulations for commercial weighing and measuring devices ... published in the National Institute of Standards and Technology Handbook 44 and supplements thereto ... shall be the specifications, tolerances, and regulations for commercial weighing and measuring devices of this Commonwealth ... ." Va. Code Ann. § 3.1-941.1 (Michie 1998). Commerce is the "exchange of goods, productions, or property of any kind." The farmers who sell their produce at the Charlottesville City Market are engaging in commerce no matter how much produce they sell. Thus, the Plaintiffs have failed to establish that they are likely to win on the merits of the case.

For the reasons stated above, this Court denies the Plaintiffs' request for a temporary injunction. The parties may schedule a hearing on the Defendant's demurrer at a later date.